C. H. AND L. J. McCORMICK, PLAINTIFFS IN ERROR, V. JOHN B. THOMPSON AND OTHERS, DEFENDANTS IN ERROR.

**Official Bonds:** JUSTICES OF THE PEACE. The sureties of a justice are liable for all moneys received by him in his official capacity; but not for moneys paid him on notes left in his hands for collection without suit.

ERROR to the district court of Sarpy county. Tried below before SAVAGE, J.

*J. S. Shropshire,* for plaintiffs in error, cited *Ditmars v. Commonwealth,* 47 Penn. State, 335. *Commonwealth v. Kendig,* 2 Penn. State, 448. *Warren County v. Warren,* 21 Iowa, 84. *People v. Treadway,* 17 Mich., 480.

*Kennedy & Gilbert* and *J. L. Webster,* for defendants in error, cited *Latham v. Brown,* 16 Iowa, 118. *Stevens v. Breatheven,* Wright, 735. *Commonwealth v. Kendig,* 2 Penn. State, 448.

COBB, J.

This was an action against the defendants as sureties on the official bond of one Thompson, a justice of the peace, for moneys claimed to have been collected by him in his official capacity.

It appears from the testimony that H. R. Gould was the general agent of the plaintiffs, and Llewellyn was a sub-agent under Gould. That some time in the latter part of 1876 Llewellyn left with Thompson certain notes of the plaintiff's. In the spring following Mr. Gould called on Thompson, and took his receipt for the notes, of which receipt the following is a copy:

" I have in my charge for collection and remittance to H. R. Gould the following claims belonging to C. H. and L. J. McCormick:

R. B. Overton, judg't. ..............................$177.53
J. M. McLain, cred., Feb. 2, 1876; Nov. 1, '76   44.34
W. M. Hale, Aug. 19, 1876, judg't. ............   77.25
Sam. P. and Mrs. S. Martin, May 20, '76, jdg't   65.20
                                      $53 March 17, 1877
R. M. Carpenter, Jan. 19, '75–Jan. 1, 1876. ...   65.00
      "      Jan. 19, '75–Jan. 1, '77.........   60.00
Abel Hogaboom,     "      ",   '76......... 105.00
            Oct. 10, '76, $40; March 17, '77   12.15
" Papillion, Neb., March 17, 1877.
  (Signed)                       " J. B. THOMPSON."

This receipt was introduced in evidence by the plaintiffs. The plaintiffs also introduced a transcript from the docket of said Thompson, showing the entry of a judgment in favor of the plaintiffs against Samuel P. Martin for $63.53 and interest from February 8, 1876, at ten per cent; also that said judgment was satisfied, and $53 paid to H. R. Gould, agent. Plaintiffs then introduced William Hale, who testified that he was indebted to the plaintiffs on a note; that suit was brought on the note before Justice Thompson; that he secured the amount by chattel mortgage; that he went to Omaha and got a letter from Llewellyn to Thompson, directing him to give witness thirty days' time; that he afterwards paid Thompson $50 on the chattel mortgage. R. M. Carpenter, sworn on the part of plaintiffs, testified that he owed plaintiffs a note for $65; that he paid the same to Justice Thompson, with interest, some time in the winter of 1876 (?); that he met Thompson in the street, who told him that he had a note for $65. He said there were a lot of McCormick notes

to be pushed and crowded. "I think I paid him $50 at the time and the rest in a short time."

Plaintiffs read in evidence the deposition of Abel Hogaboom, in which he testified that plaintiffs held a note against him in 1875 (?)  His further examination and answers were as follows:

Q.  State whether you have ever paid or settled for that note.

A.  Yes, I have paid it.

Q.  To whom did you pay it?

A.  To Squire Thompson, the same J. B. Thompson that lived in Papillion.

Q.  Have you that note with you?

A.  Yes.

Q.  Will you produce it?

A.  Yes.  (Witness produces note signed by himself in favor of C. H. and L. J. McCormick for $105, dated July 23, 1875.)

Q.  Were you ever sued on that note?

A.  No.

Q.  Did Thompson ever threaten to sue you on that note?

A.  He wrote me that if it was not settled within ten days he would commence suit.

H. R. Gould was sworn as a witness for plaintiffs, and testified that he had charge of the business of plaintiffs. He said: "I would take receipts from the parties who held our collections.  It was not my business to make collections directly, as I have a man to do that, but it was my business to finally receive all the moneys and account to the plaintiffs for them at the end of the season."

Q.  Were you acquainted with the defendant Thompson?

A.  Yes, sir.

Q. Look at that paper and state what it is (handing witness a paper).

A. That is a receipt from J. B. Thompson for collections in his hands.

Q. State if you saw him sign that paper.

A. Yes, sir.

Q. Was it signed by the defendant the day it bears date?

A. Yes, sir, March 17, 1877.

Q. At the time you took this receipt state what was said as to the capacity in which he should act.

A. There was nothing said that I remember. I knew Thompson was a justice of the peace, and left them with him for that reason.

Q. Did you know he was not an attorney?

A. I did. I trusted him only as justice. I did not know him in any other way.    *   *   *

Cross-examined by defendants.

Q. You did not leave these notes with Mr. Thompson yourself?

A. No, sir; Mr. W. H. Llewellyn did.

Q. Was he the agent of the McCormicks then?

A. He was the agent of myself.

Q. He was authorized to leave them with the justice?

A. Yes.

Q. He was acting under authority, and left them as the authorized agent of McCormick?

A. Yes.

Q. How long did he so continue to act?

A. Until the first day of January, 1878. He commenced in April, 1876, I think.

Q. How long had they been in Thompson's hands when you took this receipt, if you know?

A. I don't remember exactly; I think probably two or three months.

Q. What do you mean to be understood in your testimony in chief when you say you left them with the justice because you understood he was justice of the peace if they were left by Llewellyn three months before?

A. Llewellyn would give me an account of what notes he had left in the country, and I would go around, and if I thought they had been left with proper persons, I would take a receipt.

Q. You don't know, of your own knowledge, anything of the arrangement by Llewellyn at the time he left them with Thompson?

A. No, sir.

Witness was further cross-examined at great length, but nothing new elicited which I deem it important to notice.

The jury rendered their verdict in favor of the plaintiff for $100. Plaintiffs moved for a new trial, which, being refused, they bring the cause to this court by petition in error. The bill of exceptions presents but two points in such a manner that they can be considered by this court.

*First.* "That the court erred in refusing to give to the jury the instruction requested by plaintiffs, and numbered 'one' of plaintiff's requests."

*Second.* "That the verdict is not sustained by the evidence, but is contrary thereto."

Instruction No. one of plaintiff's requests was in the following words: "The proof shows that these notes were left with Thompson, as a justice, for the purpose of suit and collection. The general agent of plaintiff, who saw Thompson for the first time, as he remembers, on the seventeenth of March, 1877, and took from him then the receipt for the claims in controversy, testified that he allowed the notes to remain with Thompson for collection solely because he was a

justice, and would not have left them with him or transacted any business with him but for his being a justice of the peace. Under the circumstances the court regards the defendant Thompson as having acted in the premises and collected the money in his official capacity. If you are satisfied of this fact, then it follows that the bail is liable, although no suit was brought on the notes."

I do not think that the court erred in refusing this instruction, but on the contrary that to have given it would have been erroneous, as it does not contain a correct statement either of law or fact, and would have been to take the case from the jury on a question of fact.

. As to the other point, the proof shows that but two of these notes were put in judgment, to-wit: the one against Hale and the one against Martin. The first of these amounted to $70, the other to $63.20, with interest; what the interest amounted to we are not informed, but it must have been about enough to make these two judgments aggregate about $153. The proof shows that $53 was paid to the plaintiff's agent on the Martin claim by Thompson. I have no doubt that the jury, in making up their verdict, only considered these two claims as binding on the sureties on the justice's bond, and hence the amount of their finding. Can it be said that such finding is clearly wrong? I think not.

The statute (sec. 2 Gen. Stat., p. 99) provides that: "All state, district, county, precinct, and specially appointed officers, shall give bonds in the amount prescribed by law, which bonds shall be conditioned for the faithful performance of all the duties required by law of the officer giving such bond." Although the bond of the justice in this case is not drawn strictly in accordance with the above provision of law, yet it will not

be contended that it enlarges the obligation of the sureties beyond that contemplated by the statute. To pay over money collected officially is certainly one of the duties required by law of a justice of the peace, and to insure the faithful discharge of that duty is the chief purpose for which he is required to give a bond.

But the question in this case is as to the moneys received by Thompson from Hogaboom and Carpenter. Did he receive them officially? This question was, I think, fairly submitted to the jury, and by their verdict they have answered in the negative. The general statutes, sec. 1,100, on page 705, provides as follows: "In all actions instituted before a justice of the peace founded upon any bond, bill, promissory note, or other instrument in writing, for the payment of a sum of money certain, of which the whole amount of money promised therein is due, it shall be the duty of the plaintiff, his agent, or attorney, to file said bond, bill, promissory note, or other written evidence of indebtedness upon which such suit is brought with such justice of the peace," etc. This statute contains the only authority which I can find for delivering notes, etc., to a justice of the peace, and is his only official authority for receiving them at all. If, after a note is filed with a justice under the provisions of the above section, the debtor pays the money due thereon to the justice, either before or after the issue of a summons thereon, such money would be received by the justice officially, would be in his hands by virtue of his office, and his bondsmen would be liable for its payment.

Now what does the evidence show in this case. That some time in the latter part of the year 1876 the sub-agent of the plaintiffs delivered to the principal defendant a lot of notes for collection. Of the seven of these notes of which we have any knowledge, two

McCormick v. Thompson.

of them were in amount above a justice's jurisdiction, one being for $177.53 and the other for $105. On the 17th of March, 1877, the agent of the plaintiff, in pursuance of his custom (which he expresses in his evidence in the following words: "I would go around, and if I thought they had been left with proper persons I would take a receipt"), called on Thompson and took the receipt which was offered in evidence. There is no evidence that these notes were left with Thompson to be collected by him in his official capacity, and the fact that nearly half of them in amount were not within his official jurisdiction seems to forbid the conclusion that they were. And even as to those claims which were within the justice's jurisdiction, I cannot conceive how the plaintiff could have relied upon him to collect them officially.

In an action brought before a justice of the peace, where the plaintiff is a non-resident of the county, he may be required to give security for costs. Can the law contemplate that the justice shall procure such security? Again, sec. 951, p. 676, Gen. Stat., provides: "In all cases before a justice the plaintiff, his agent, or attorney shall file with such justice a bill of particulars of his demand," etc. Would it be correct practice for the justice to assume to prepare such bill of particulars, and thereby put himself in the position of agent or attorney of the plaintiff as well as court? Such a practice would be contrary to public policy and could not be sanctioned by this court.

I think that the jury had evidence to sustain them in the conclusion that the money collected by Thompson from Hogaboom and Carpenter was not received by him in his official character, and that the judgment of the district court should be affirmed.

JUDGMENT AFFIRMED.